IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN FAIRCHILD, | CASE NO. 1:04-cv-06610 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |
| Defendant. | |

Plaintiff Joan Fairchild ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on November 24, 2004 (Doc 1), and her opening brief on June 24, 2005. (Doc. 11). The Commissioner filed her opposition on August 18, 2005 (Doc. 14). Claimant did not file a reply brief.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge. (Docs. 6 and 8). By an order dated May 26, 2005, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 10).

///

///

1

# JURISDICTION

On or about July 10, 2002, claimant filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), with a protective filing date of June 7, 2002 (Administrative Record ("AR") 19, 85, 86-88).[1]  Claimant alleged a disability onset date of December 15, 2001 caused by the following impairments: "bad-back, bad feet, psoriasis, arthritis." (AR 98).  Claimant's applications were denied initially and on reconsideration, whereupon claimant requested an administrative hearing.  (AR 68-71, 73-77, 78).   The hearing was conducted on May 4, 2004, after which, on June 21, 2004, Administrative Law Judge ("ALJ") David E. Flierl found that claimant was not disabled.  (AR 19-24).  The Appeals Council denied claimant's request for review on September 24, 2004 (AR 4-5), leaving the ALJ's decision of June 21, 2004, as the final decision of the Commissioner.

On November 24, 2004, 61 days after the Appeals Council denied review, claimant filed an appeal with the district court pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  This 61 day filing period facially violates section 405(g), which states that judicial review is predicated on the filing of a civil action "within sixty days after the mailing" of notice of decision.  However, the "60-day requirement is not jurisdictional, but rather constitutes a period of limitations." Bowen v. City of New York, 476 U.S. 467, 478 (1986).  Moreover, the Social Security Administration has extended the filing time by regulation to allow a filing within 60 days after the date a claimant *receives* notice of the Appeals Council's final action.  20 C.F.R. §§ 404.981.  Such notice is presumed to have been received within five days after the date on the notice, 20 C.F.R. § 422.210(c), in which case a claimant has 65 days to file an appeal.  Here, claimant timely filed her appeal on the 61st day after the Appeals Council's decision.

///
///
///

---

[1] The administrative record does not appear to reflect the actual SSI application, an issue noted by the ALJ and claimant's counsel at the administrative hearing. (AR 41-42). Even so, and throughout the administrative process, claimant has been treated as having filed both DIB and SSI claims, and both consistently have been denied. (E.g., AR 68, 78).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on January 3, 1955, making her 49 years old at the time of ALJ Flierl's decision. (AR 43). At the administrative hearing on May 4, 2004, claimant weighed 235 pounds and was 5' 5" tall. (AR 43). Claimant testified that she had completed high school and that she had worked for In-Home Supportive Services for ten years, during which time she provided such in-home care as doing dishes, laundry, carrying groceries and taking persons to stores or to medical appointments. (AR 44-45). Claimant testified that she stopped working in December 2001 because she could no longer stand the pain of her open psoriasis sores, also because she could not sleep, because her feet swelled and because of back problems. (AR 46). Claimant also testified that a reason she stopped working was that she could no longer deal with the way the psoriasis made her look. (AR 51). Upon questioning by the ALJ, claimant also admitted that one of the reasons she had stopped working was that the person that she had been caring for had died. (AR 61).

As to her impairments, claimant appeared at the hearing with a face that was "all red" due to psoriasis. (AR 47). Photographs were provided to the ALJ showing the psoriasis lesions on claimant's thighs, legs, arms and back. (AR 47, 250-56). Claimant testified that, on a bad day, she is in a lot of pain and needs to stand up and sit down due to swelling in her feet. (AR 47). Sometimes, according to claimant, she "just can't stand it." (AR 47). Claimant stated that she always has open sores on some part of her body (AR 47) and that the itching sensation from her psoriasis is "really bad," so much so that she sometimes cannot stop from scratching herself. (AR 57). In addition to her psoriasis, claimant testified that she had been seeing a counselor for depression at Sage Brush Medical Center for about a year. (AR 57). In addition to her psoriasis and depression, claimant testified that she had seen a physician about moderate degenerative changes in her back, and had x-rays taken in November 2001. (AR 53). According to claimant, her back hurts all of the time. (AR 53). Claimant also testified that she cannot stand for very long because her feet swell (daily) and her legs get numb. (AR 55-56). Claimant did not know whether the swelling was due to heel spurs on both of her feet, a problem also identified in 2001. (AR 55-56). Finally,

1  claimant stated that she has arthritis.  (AR 60).

2      As to her daily life activities, claimant testified that she lives with her boyfriend, who helps
3  around the house.  (AR 56).  According to claimant, her walking is limited to less than 30 feet at a
4  time as her feet get swollen and hurt badly and she does not want to fall down.  (AR 58).  During the
5  day, claimant mainly watches television or listens to music, but gets up and moves around a little bet
6  when she hurts too badly (AR 59).  Claimant testified that she microwaves her meals and does not
7  cook much because she did not want her psoriasis flakes to fall into her food.  (AR 59).

## SEQUENTIAL EVALUATION PROCESS

9      The Social Security Act defines "disability" as the "inability to engage in any substantial
10 gainful activity by reason of any medically determinable physical or mental impairment which can be
11 expected to result in death or which has lasted or can be expected to last for a continuous period of
12 not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides
13 that a claimant shall be determined to be under a disability only if her impairments are of such
14 severity that claimant is not only unable to do her previous work but cannot, considering claimant's
15 age, education and work experiences, engage in any other substantial gainful work which exists in
16 the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

17     The Commissioner has established a five-step sequential evaluation process for determining
18 whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if she is
19 engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(b),
20 416.920(b).  If she is not, the decision maker proceeds to step two, which determines whether
21 claimant has a medically severe impairment or combination of impairments.  20 C.F.R.
22 §§ 404.1520(c), 416.920(c).

23     If claimant does not have a severe impairment or combination of impairments, the disability
24 claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which
25 compares claimant's impairment with a number of listed impairments acknowledged by the
26 Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
27 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed
28 impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one

conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## ALJ'S FINDINGS

**Step One**

The ALJ found at step one that claimant "has not engaged in substantial gainful activity since December 15, 2001." (AR 22).

**Step Two**

At step two, the ALJ determined that the claimant has the following "severe" impairments: psoriasis, bilateral foot spurs and obesity. (AR 20, 22). The ALJ concluded that claimant's degenerative disc disease of the spine was a "slight impairment" having "only minimal, if any, effect on her ability to work." (AR 20, 22).

**Step Three**

The ALJ next considered whether claimant's impairments, while severe, fit within the

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1 (Listing of Impairments). Upon making the comparison, the ALJ concluded that claimant's impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (AR22).

**Step Four**

The ALJ concluded at step four that claimant was unable to perform her past relevant work as an in-home care provider. (AR 23).

**Step Five**

Having found that claimant could not perform her past relevant work, the ALJ next considered whether there were any jobs existing in significant numbers in the national economy which claimant could perform consistent with her residual functional capacity, age, education and work experience. (AR 23). Given an exertional capacity for sedentary work, and a residual functional capacity to lift and carry 20 to 25 pounds occasionally or 10 to 15 pounds frequently, as well as the ability to be on her feet 60 to 90 minutes at a time for a total of either 4 to 5 hours in an 8-hour workday (with frequent breaks) or 2 hours in an 8-hour workday (with occasional breaks), the ALJ concluded - based upon vocational expert testimony - that there were a significant number of jobs in the national economy that claimant could perform, "such as 77,000 assembler positions in California." (AR 23).[2] Accordingly, the ALJ concluded that claimant was not under a disability as defined in the Social Security Act. (AR 23).

**ISSUES**

Claimant's Opening Brief raised the following four issues for consideration:

A. Whether claimant's psoriasis meets Listed Impairment 8.05.

B. Whether the ALJ articulated specific and legitimate reasons for rejecting the opinions of claimant's treating physician.

---

[2] By using the phrase "such as," the ALJ's determination implies that the referenced 77,000 assembly positions in California was just an example, and that there were still other jobs available to claimant. However, the vocational expert testified that he could think of no other available jobs given the stated limitations. (AR 64).

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A. Psoriasis and Listed Impairment 8.05**

   **I  Applicable Regulation**

New regulations applicable to skin and other impairments - including Listed Impairment 8.05 - were published by the Social Security Administration on June 9, 2004. 69 Fed. Reg. 32260 (June 9, 2004). It therefore is important to determine which regulations apply, old or new.

According to the new regulations themselves, it is the old regulations that apply (even though the new regulations were used by the Commissioner in her brief)[3]. By their terms, the new regulations did not become effective until July 9, 2004, thirty days after they were published on June 9, 2004. 69 Fed. Reg. 32260 (June 9, 2004). Also by their terms, the new regulations are not to be considered by this Court in conducting judicial review of "final decisions" made before July 9, 2004 (such as the final decision pertaining to claimant, which was made by ALJ Flierl on June 21, 2004)[4]:

> "As is our usual practice when we make changes to our regulations, we will apply these final rules on or after their effective date when we make a determination or decision in claims for benefits that are pending in our administrative review process, including those claims that are pending administrative review after remand to us from a Federal court. <u>With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision

---

[3] The new skin impairment regulations cited by the Commissioner in her brief (Doc. 14 at pp. 3-5) impose a more difficult burden insofar as they require proof of a "very serious" limitation caused by skin lesions, and not merely the existence of such lesions alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 108.00(C). On the other hand, however, the new regulations for the first time require the consideration of pain as a factor contributing to the severity of a skin disorder. Id. at § 108.00(C)(3).

[4] If the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's "final decision." If, however, the Council denies the request for review, as here, then the ALJ's decision becomes the "final decision." Sims v. Apfel, 530 U.S. 103, 106-07 (2000)(*citing*, inter alia, 20 C.F.R. § 422.210(a)("[a] claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review, or of a decision by the Appeals Council *when that is the final decision* of the Commissioner")(emphasis added)). The Appeals Council, here, stated essentially the same rule when it denied claimant's request for review: "[Y]our request [for review] is denied and the Administrative Law Judge's decision stands as the *final decision* of the Commissioner of Social Security in your case." (AR 4)(emphasis added).

<blockquote>
would be made in accordance with the rules in effect at the time of the final decision.
</blockquote>

69 Fed. Reg. 32260 (June 9, 2004)(emphasis added).

The old skin impairment regulations - still applicable in this case - provided as follows:

> "8.00.  A. *Skin lesions* may result in a marked, long-lasting impairment if they involve extensive body areas or critical areas such as the hands or feet and become resistant to treatment.  These lesions must be shown to have persisted for a sufficient period of time despite therapy for a reasonable presumption to be made that a marked impairment will last for a continuous period of at least 12 months.  The treatment for some of the skin diseases listed in this section may require the use of high dosage of drugs with possible serious side effects; these side effects should be considered in the overall evaluation of impairment.
>
> . . .
>
> "8.05.  *Psoriasis, atopic dermatitis, dyshidrosis.*  With extensive lesions, including involvement of the hands or feet which impose a marked limitation of function and which are not responding to prescribed treatment."

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00 and 8.05 (Apr. 1, 2004)(emphasis added).

### ii.     ALJ's Findings Regarding Listing 8.05

Claimant asserts that, given her long-established history of psoriasis outbreaks on multiple areas of her body, including her face, back and legs, the ALJ erred in not specifically discussing whether this impairment met Listed Impairment 8.05 and, indeed, in not mentioning the listing at all. (Doc. 11 at p. 5).

It is true that ALJ Flierl's findings were very sparse in terms of his rejection of a step three disability determination.  As the ALJ wrote:

> "The medical evidence establishes that the claimant has psoriasis, bilateral foot spurs and obesity, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."

(AR 22).  However, the ALJ *did* discuss the nature of claimant's psoriasis elsewhere in his written opinion.  As the ALJ specifically wrote:

> "The claimant . . . has had psoriasis all of her life (Exhibit 4F, p. 5). Pictures establish that the areas most affected are her face, arms, back, legs and ankles (Exhibit 12F); there is no allegation of problems with her hands and feet.  She has sought and obtained treatment from specialists and general practitioners. (Exhibits 4F; 7F; 15F, pp. 58, 47,

9

> 41, 26 and 17).  In August 2002, dermatologist Dr. Omidi stated that although the claimant has significant widespread psoriasis, he could not make any assessment of disability.  (Exhibit 4F, p. 2)."

(AR 20)(emphasis added).  The Ninth Circuit held in Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001) that an ALJ's evaluation of evidence supporting his or her step three determination need not be done under the heading "Findings."  Here, ALJ Flierl evaluated the nature of claimant's psoriasis and explicitly found no involvement of the psoriasis in claimant's hands or feet.  (AR 20).  Given that listing 8.05 imposes such a requirement - there must be "extensive lesions, including involvement of the hands or feet" -  the basis for the ALJ's determination that no listed impairment existed was indeed set forth in his written determination.  Thus, under the facts as found by the ALJ, the claimant did not establish that her condition met or equaled a listed impairment.  See Tackett, 180 F.3d at 1098 (the burden of proof is on claimant in steps one through four of the sequential analysis).

**B.    Rejection of Treating Physician's Opinion**

Claimant argues that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinions of claimant's treating physician, Kain Kumar, M.D.  (Doc. 11 at pp. 6-8).

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition.  Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician.  Lester, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted); see, also 20 C.F.R. § 404.1527.  In order to reject a treating physician's ultimate conclusions, the ALJ must supply "clear and convincing" reasons.  Fair, 885 F.2d at 604-605.  Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only if the ALJ provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Id. (quoting Murray v. Heckler, 722 F.2d 499,

502 (9th Cir. 1983)). Historically, courts within the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a treating or examining physician's opinion. Flaten v. Secretary of Health & Human Svcs., 44 F.3d at 1453, 1463-64; Fair, 885 F.2d at 604.

Here, the issue is the ALJ's rejection of Dr. Kumar's opinion that claimant suffered from back impairments that precluded full time work. (Doc. 11 at p. 6). Claimant cites two reports from Dr. Kumar, one dated November 16, 2001 (AR 220) and another dated January 21, 2002 (AR 211). Both reports include a checkmarked box to the effect that claimant was temporarily precluded from full time work. (AR 211, 220). In his November 16, 2001 report, Dr. Kumar indicated that claimant was precluded from full time work for two months, through January 15, 2002. (AR 220). In his next report, Dr. Kumar stated that claimant was precluded from full time work for an additional two months, until March 21, 2002. (AR 211). Both reports were based upon Dr. Kumar's diagnoses of lower back pain and bilateral heel spurs. (AR 211, 220). Although not referenced in claimant's brief, another report by Dr. Kumar, dated January 29, 2002, stated that claimant "needs surgical intervention" (apparently a laminectomy and discectomy) and that she could return to her regular work - as Dr. Kumar had earlier opined - by March 21, 2002. (AR 210).

The ALJ's basis for discounting Dr. Kumar's opinion was as follows:

> "On January 29, 2002, the claimant's then treating physician Dr. Kumar stated that the claimant needed back surgery, yet he also said he expected her to return to her 'regular or customary work' on March 21, 2002 (Exhibit 8F, p. 20). However, there is nothing in his few clinical notes supporting such drastic treatment (Exhibit 8F). There is no evidence of any treatment for back pain other than routine medication. Consequently, the Administrative Law Judge has given Dr. Kumar's opinion little weight." (AR 20).

As is evident from the above quote, ALJ Flierl gave specific and legitimate reasons for his rejection of Dr. Kumar's opinion.

First, the ALJ noted that there was nothing in Dr. Kumar's few notes reflecting any need for the drastic step of surgery. (AR 20). Among these notes, and in Dr. Kumar's file, was a radiologic report from Antelope Valley Hospital. (AR 207-08). The reported impressions from that MRI were

that claimant had minimal discogenic disease at L2-3 with a small central disc protrusion, mild discogenic disease at L4-5 with a bilateral facet degenerative disc producing minimal bilateral subarticular recess stenosis, and mild discogenic disease at L5-S1, a diffuse disc bulge, a right posterior annular fissure tear and minimal bilateral facet degenerative changes. (AR 208). These conditions were identical to those presented to a consultative examining orthopedic physician, Jonathan M. Guirdin, M.D., who found that claimant required nothing more than weight loss, physical therapy and anti-inflammatory medication (AR 171). Dr. Guirdin's opinion was duly reported by the ALJ immediately following his discussion of Dr. Kumar's opinion, and provides a further specific, legitimate basis for his decision to afford "little weight" to Dr. Kumar's opinion. (AR 20-21).

Second, the ALJ noted that there was no evidence of any treatment for back pain, in Dr. Kumar's records, other than "routine medication." (AR 20). Once again, the minimal nature of such treatment was confirmed by Dr. Guirdin, a consultative examining orthopedic physician, who opined that claimant's condition could be improved with weight loss, physical therapy and anti-inflamatory medication but that, even untreated, claimant was capable of a residual functional capacity consistent with sedentary work. (AR 171).[5]

In sum, the reasons given by the ALJ for rejecting Dr. Kumar's assessment were sufficiently specific and supported by substantial evidence in the record.

## **CONCLUSION**

For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

///

---

[5] The Commissioner makes much of the fact that, according to Dr. Kumar's reports, claimant was unable to work for only four months (Doc. 14 at pp. 5-6), and that this is less than the twelve month durational requirement for a finding of disability. See 42 U.S.C. § 423(d)(1)(A). In commenting upon the same short-lived out-of-work period, the ALJ appears to have deemed it as further evidence of either the minimal nature of claimant's lower back impairment or the incongruity of requiring surgery for it. (See AR 20).

1 | The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Joan Fairchild.

IT IS SO ORDERED.

Dated:   **March 15, 2006**                                    **/s/ Theresa A. Goldner**
**j6eb3d**                                                     UNITED STATES MAGISTRATE JUDGE